# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39754**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Gregory C.S. MERRITT II**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 February 2021

————————————

*Military Judge:* Joseph S. Imburgia.

*Sentence:* Sentence adjudged on 23 May 2019 by GCM convened at Kadena Air Base, Japan. Sentence entered by military judge on 6 June 2019: Dishonorable discharge, confinement for 30 months, and reduction to E-1.

*For Appellant:* Major Amanda E. Dermady, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and MEGINLEY, *Appellate Military Judges.*

Senior Judge POSCH delivered the opinion of the court, in which Judge RICHARDSON joined. Judge MEGINLEY filed a separate opinion dissenting in part and in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Senior Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty in accordance with his plea of one Charge and Specification of wrongful possession of child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (*Manual for Courts-Martial, United States* (2016 ed.)).[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

In accordance with the terms of a pretrial agreement (PTA), the convening authority disapproved the adjudged forfeitures, and approved the remainder of the adjudged sentence.[2] Also in accordance with the PTA, the convening authority deferred the reduction in grade and the adjudged and mandatory forfeitures of pay and allowances from 6 June 2019 until the date the entry of judgment (EoJ) was signed by the military judge.[3] The PTA required the convening authority to waive the mandatory forfeitures for a period of six months or expiration of Appellant's term of service, whichever was sooner, with the waiver commencing on the date the EoJ was signed by the military judge. The convening authority did so, and directed the waived forfeitures to be paid to a court-ordered conservator for the benefit of Appellant's two dependent children.

---

[1] The Charge and its Specification were referred to trial after 1 January 2019; as such, unless otherwise specified, all other references to the Uniform Code of Military Justice (UCMJ), and to the Rules for Courts-Martial (R.C.M.), in this opinion are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). *See* Exec. Order 13,825, §§ 3 and 5, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018) (establishing 1 January 2019 as the effective date for changes to the UCMJ and R.C.M. made by the Military Justice Act of 2016 (MJA)).

[2] Appellant was convicted of a specification that alleged the commission of an offense before 1 January 2019. Consistent with the respective opinions of the judges of this panel in *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.), and subsequent cases, we find that action on the components of the sentence that the convening authority effectuated without modification was not required. Nonetheless, the convening authority's Decision on Action memorandum is "clear and unambiguous," *United States v. Politte*, 63 M.J. 24, 25–26 (C.A.A.F. 2006) (footnotes omitted), and Appellant suffered no prejudice even if there was error.

[3] The convening authority signed the Decision on Action memorandum on 5 June 2019, and the entry of judgment (EoJ) was signed on 6 June 2019.

Appellant raises two issues on appeal. In his first assignment of error, Appellant argues his confinement conditions at two military facilities were cruel and unusual under the Eighth Amendment to the United States Constitution[4] and Article 55, UCMJ, 10 U.S.C. § 855. He further argues that even in the absence of an Eighth Amendment or Article 55, UCMJ, violation, his confinement conditions rendered his sentence inappropriately severe, warranting relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c),[5] and *United States v. Gay*, 75 M.J. 264 (C.A.A.F. 2015). In a second assignment of error, Appellant claims his case was not timely docketed with this court.

Finding no error, and following this court's Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (*Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*)), mandate to approve only so much of the sentence as we find, on the basis of the entire record, should be approved, we affirm the findings and the sentence.

## I. BACKGROUND

Appellant's conviction is founded on his plea of guilty to wrongfully possessing child pornography. Appellant committed the charged offense when he was stationed at Kadena Air Base, Japan.

Appellant's conduct came to the attention of military authorities in April 2018, after his wife discovered an animated depiction of child pornography on their home computer's desktop. Appellant had recently downloaded the file from the Internet and not yet moved it to a password-protected folder that his wife could not access. Upon discovering the file, she called Security Forces, who in turn, contacted special agents of the Air Force Office of Special Investigations (AFOSI). AFOSI agents viewed the suspected contraband, contacted a military magistrate, and obtained authorization to search and seize Appellant's electronic devices for evidence.

As stipulated at trial, analysis of the computer hard drive where the suspected child pornography was found revealed that Appellant possessed 428 files with hash values on file with the National Center for Missing and Exploited Children (NCMEC). A NCMEC-positive hash value indicates that the hash value for a file which was previously identified as being connected to an

---

[4] U.S. CONST. amend. VIII.

[5] References to Article 66(c), UCMJ, 10 U.S.C. § 866(c), in this opinion are to a version that was in effect before implementation of the MJA as incorporated in the 2019 *MCM*, which is substantially similar to Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1).

actual victim of child pornography matched the hash value of a file on Appellant's computer. Of those files, 399 were still pictures and 29 were videos.[6] Thirty-three known children were connected to positive hash values on file with NCMEC found on Appellant's hard drive. At trial, the military judge discussed with Appellant that counsel for both parties agreed that a "representative sample" consisting of 17 video files and 11 images files from his hard drive constituted child pornography. Appellant agreed that was his understanding as well.

Evidence at trial established that seizure of Appellant's computer hard drive revealed that he wrongfully possessed child pornography from 12 September 2017 to 8 April 2018.

## II. DISCUSSION

### A. Conditions of Post-Trial Confinement

#### 1. Additional Background

In his appeal, Appellant submitted a sworn declaration and asks this court to reduce his sentence because he was denied sterile water and medical supplies for his prescribed Continuous Positive Airway Pressure (CPAP) machine. Appellant entered confinement on 23 May 2019 at the Marine Corps Installations Pacific Brig at Camp Hansen, Japan. During his intake physical later the same day, Appellant informed confinement officials of his diagnosed obstructive sleep apnea and that he required his CPAP machine. Appellant explains in his declaration that the condition causes his breathing to repeatedly stop and start during sleep. The CPAP machine works by blowing air into his throat via a mask to increase air pressure and prevent narrowing of his airway.

Appellant explains in his declaration that confinement officials brought him his machine nightly to assist him to sleep. Some CPAP machines, including his, have a humidifier to prevent dryness of the mouth and nose. On 30 July 2019, Appellant informed officials he needed new supplies, which were not provided even though he followed up on that request two or three times.

In early August 2019, Appellant noticed the water in the machine had a distinctive "rusty orange tint" that was consistent with the color of the water from the drinking fountain. He "also noticed a buildup of rust in [his] machine." He brought up this issue to a confinement official, explaining that the machine required sterile water and that he was concerned for his health. Appellant believes that as a result of the continued use of discolored, unsterile water he developed painful sores on the inside of his nose. He had never noticed residue,

---

[6] Twenty-three of the video files were playable and depicted child pornography.

nose sores, or any other adverse effects in the three years he had been using the machine, and believed these things occurred because of the water that confinement officials were providing him to use. Appellant stressed to these officials the importance of regularly cleaning the machine and that medical providers who prescribed the machine had recommended that Appellant replace his supplies every three months for proper maintenance and maximum effectiveness.

Appellant renewed his request for supplies on 9 September 2019, and filed a grievance using Department of Defense Form 510, *Prisoner Request*. Appellant emphasized his need for sterile water and medical supplies for proper maintenance. A few days later, confinement officials began bringing Appellant sealed bottles of water, but did not resolve Appellant's supply request.

On 14 September 2019, Appellant was transferred to the Naval Consolidated Brig Charleston at Joint Base Charleston, South Carolina. Upon arrival, he informed confinement officials that he had been trying to order new supplies for the machine while at Camp Hansen. Although officials in Charleston informed Appellant that they would work on the issue, as of one day before filing his brief supporting his assignments of error, 10 December 2019, he had yet to receive those supplies.

In response to Appellant's declaration, the Government provided declarations from officials at both confinement facilities. The executive officer at Marine Corps Installations Pacific Brig declared that medical staff forwarded the referral for the CPAP cleaning supplies to the 18th Medical Group at Kadena Air Base, Japan, on 30 July 2019. On 9 September 2019, Appellant made an inquiry to the medical staff at the brig, asking about the status of his CPAP re-supply. Later that same day the staff counseled him to clean his CPAP every morning and advised him that they would follow-up on his CPAP re-supply request.

The legal officer at Naval Consolidated Brig Charleston declared that on 8 October 2019, Appellant requested CPAP supplies from its medical staff. On 10 October 2019, medical personnel contacted the CPAP supply company and ordered the requested items. On 18 November 2019, 26 November 2019, and 4 December 2019, Appellant returned to the medical staff for only CPAP water. On 12 December 2019, Appellant inquired again about CPAP supplies, and that same day medical staff were unsuccessful attempting a follow-up on their CPAP supply request. The legal officer noted that Appellant currently has CPAP "equipment that is functioning fine with the exception of a head strap that comes unattached while he sleeps, and he reattaches it." On 19 December 2019, the Senior Medical Corpsman at Charleston spoke with the manager from the CPAP supply company and "was assured that [the manager] would fix the delay in supplies issue with his staff."

**2. Law**

At the outset, we note that counsel for both parties reference this court's Article "66(c)," UCMJ, authority to affirm "the sentence or such part or amount of the sentence, as" this court "finds correct in law and fact and determines, on the basis of the entire record, should be approved." Although this language is unchanged in the 2019 *MCM*, in a case like Appellant's in which the Charge and Specification were referred to trial after 1 January 2019, the scope of this court's jurisdiction is codified in Article 66(d)(1), UCMJ (2019 *MCM*). *See* Exec. Order 13,825, §§ 3(a) and (d), 83 Fed. Reg. at 9890 (changes directed by the MJA "shall take effect on January 1, 2019," and "shall not apply in any case in which charges are referred to trial by court-martial before January 1, 2019").

### a. Eighth Amendment and Article 55, UCMJ

Under a Court of Criminal Appeal's (CCA) Article 66(d)(1), UCMJ, mandate to approve only so much of the sentence as it finds "correct in law," this court cannot affirm "an unlawful sentence, such as one that violates the prohibition against cruel and unusual punishment in the Eighth Amendment and Article 55, UCMJ." *United States v. Jessie*, 79 M.J. 437, 440 (C.A.A.F. 2020) (citing *United States v. Erby*, 54 M.J. 476, 478 (C.A.A.F. 2001) and referencing Article 66(c), UCMJ). Claims asserted on the basis of the Eighth Amendment and Article 55, UCMJ, are among the "limited class of issues" for which our superior court's "precedents have allowed the CCAs to consider materials outside the record . . . even though those issues are not raised by anything in the record." *Id.*; *see also id.* at 445 ("Consistent with the Government's proposal for accommodating the discordant precedents, all we must decide today is that the practice of considering material outside the record should not be expanded beyond the context of Article 55, UCMJ, and the Eighth Amendment.").

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55 . . . is apparent." *United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 [U.S.C.] § 938 [2000]."

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (omission and third alteration in original) (footnotes omitted).

This court's resolution of the first and second *Lovett* prongs is informed by the decisions of our superior courts. "Denial of adequate medical attention can constitute an Eighth Amendment or Article 55[, UCMJ] violation." *United States v. White*, 54 M.J. 469, 474 (C.A.A.F. 2001) (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000)). However, the standard is "reasonable" medical care rather than "perfect" or "optimal" care. *Id.* at 475. (citing *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)). The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (footnote omitted) (citation omitted). "In order to state a cognizable claim" of medical mistreatment under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842 (citation omitted). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Id.* at 832 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). However, "prison officials who lack[ ] knowledge of a risk cannot be said to have inflicted punishment . . . ." *Id.* at 844.

Under the third *Lovett* prong, a confinee must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions. *White*, 54 M.J. at 472. The United States Court of Appeals for the Armed Forces (CAAF) has repeatedly held that a confinee "must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 471 (C.A.A.F. 2007) (internal quotation marks and citations omitted). "This generally means that the prisoner will have exhausted the detention center's grievance system and petitioned for relief under Article 138, UCMJ." *United States v. Henry*, 76 M.J. 595, 610 (A.F. Ct. Crim. App. 2017). "Exhaustion requires Appellant to demonstrate that two paths of redress have been attempted, each without satisfactory result." *Wise*, 64 M.J. at 471. This requirement exists to promote "resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* (alterations in original) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

### *b. Sentence Appropriateness, Article 66(d), UCMJ*

In the absence of an Eighth Amendment or Article 55 violation, we may grant sentence relief due to an appellant's post-trial treatment under this court's Article 66(d)(1), UCMJ, mandate to approve only so much of the sentence as we find, "on the basis of the entire record, should be approved." In keeping to its statutory authority, a CCA "may not affirm any portion of a sentence that it finds excessive" as part of its sentence-appropriateness review. *Jessie*, 79 M.J. at 440 (citing *United States v. Nerad*, 69 M.J. 138, 141 (C.A.A.F. 2010) and referencing Article 66(c), UCMJ).

Although a CCA has "broad discretionary power to review sentence appropriateness," *id.* (quoting *United States v. Kelly*, 77 M.J. 404, 405 (C.A.A.F. 2018)), that authority is not absolute. In *Gay,* the CAAF affirmed a decision of this court that reduced an appellant's sentence under Article 66(c), UCMJ, because prison officials had made him serve part of his sentence in solitary confinement to forestall further violations of Article 12, UCMJ, 10 U.S.C. § 812.[7] 75 M.J. at 266. Information about those conditions was part of the record of trial because the appellant had requested additional confinement credit when he complained about them to the convening authority. *Id.* at 265–66. The CAAF held this court "did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion that the conditions did not rise to a violation of the Eighth Amendment or Article 55[, UCMJ]." *Id.* at 268. In doing so, the CAAF made clear that the authority to grant sentence appropriateness relief is not unlimited and, specifically, a CCA is not empowered to grant relief for any condition of post-trial confinement of which the CCA disapproves. *Id.* at 269. Rather, a CCA's authority under Article 66(c), UCMJ, arises when it finds "a legal deficiency in the post-trial process." *Id.* In other words, the genesis for relief must be "sparked by a legal error."[8] *Id.*

This court's sentence appropriateness review is further limited to the "entire record," Article 66(d)(1), UCMJ, that is, "to claims based on post-trial treatment that occurs prior to the action of the convening authority and which is documented in the record of trial." *United States v. Towns*, 52 M.J. 830, 833

---

[7] "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." Article 12, UCMJ, 10 U.S.C. § 812 (*Manual for Courts-Martial, United States* (2012 ed.)).

[8] In *United States v. Buford*, we further explained that Article 66(c), UCMJ, does not confer unlimited authority to "grant relief for an administrative matter unrelated to any legal deficiency and unconnected to the legality or appropriateness of a court-martial sentence." 77 M.J. 562, 565 (A.F. Ct. Crim. App. 2017).

(A.F. Ct. Crim. App. 2000) (citing Article 66(c), UCMJ), *aff'd*, 55 M.J. 361 (C.A.A.F. 2001) (mem.). Nineteen years after the CAAF affirmed *Towns*, our superior court observed that some of its precedents, like *Gay*, hold that CCAs "may consider only what is in the record" when reviewing a sentence under Article 66, UCMJ. *Jessie*, 79 M.J at 440 (citation omitted). The CAAF noted the leading case for these precedents is *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961), in which the appellant asked the Army Board of Review to reject his punitive discharge based on a favorable psychiatric assessment and a favorable report regarding his conduct while in confinement. *Jessie*, 79 M.J. at 441 (citing *Fagnan*, 30 C.M.R. at 193). The Board of Review declined to consider these documents, explaining that because the submission "concerns matters which occurred months after the convening authority acted upon the sentence and forwarded the record of trial, it is not a part of the record subject to review under Article 66[, UCMJ]." *Id.* (quoting *Fagnan*, 30 C.M.R. at 194). The United States Court of Military Appeals, the predecessor to the CAAF, affirmed, holding that under Article 66(c), UCMJ, "the board of review is expressly restricted by Congress to the 'entire record' in assessing the appropriateness of the sentence." *Id.* (quoting *Fagnan*, 30 C.M.R. at 194). The *Jessie* court reiterated the reasoning in *Fagnan* that "if military justice proceedings are to be 'truly judicial in nature,' then the appellate courts cannot 'consider information relating to the appropriateness of sentences when it has theretofore formed no part of the record.'" *Id.* (quoting *Fagnan*, 30 C.M.R. at 195).

In *Jessie*, our superior court concluded that "*Fagnan* established a clear rule that the CCAs may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ." *Id.* (citation omitted). Specifically in regard to conditions of post-trial confinement, "[t]he rule in *Fagnan* does not preclude the CCAs from considering prison conditions when reviewing a sentence under Article 66(c), UCMJ, if the record contains information about those conditions." *Id.* at 441–42; *see also id.* at 444 n.10 ("Because both the sentence appropriateness and correctness in law determinations require a decision based upon the 'entire record,' we need not determine whether post-trial confinement conditions fall under one or both provisions.").

Consequently, when we evaluate conditions of post-trial confinement as part of our Article 66(d)(1), UCMJ, sentence appropriateness review, our discretionary power to grant relief must be predicated on a finding of a legal error or deficiency in the post-trial process, and our review is restricted to the record.[9] The "exercise of our judicial powers is limited to ensuring justice is done,"

---

[9] The entire record includes both the record of trial and matters attached to the record of trial. *See United States v. Jessie*, 79 M.J. 437, 440–41 (C.A.A.F. 2020) (citing *United*

which "do[es] not extend to the exercise of clemency." *Towns*, 52 M.J. at 833 (citing *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988)). "Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017).

In conducting our Article 66(d)(1) sentence appropriateness review, we have declined to require appellants to demonstrate they have previously exhausted administrative remedies prior to seeking judicial relief. *See Henry*, 76 M.J. at 610. We instead consider the entire record and typically give "significant weight" to an appellant's failure to exhaust those remedies before requesting judicial intervention. *Id.*

**3. Analysis**

We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's declaration and the declarations submitted by the Government. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We find a hearing unnecessary in this case. To the extent that the declarations are inconsistent, resolving any factual disputes in Appellant's favor would not result in relief. *See Ginn*, 47 M.J. at 248. We consider each of Appellant's claims in turn.

### a. Eighth Amendment and Article 55, UCMJ

We first address Appellant's claim that confinement conditions at both military facilities were cruel and unusual under the Eighth Amendment and Article 55, UCMJ. In order to secure relief for cruel and unusual punishment, Appellant bears the burden to demonstrate all three prongs of the *Lovett* test are met. *See* 63 M.J. at 215. We conclude that Appellant fails to meet his burden to establish grounds for relief.

We have considered Appellant's claim of a lack of responsiveness on the part of prison officials that may have caused an unwarranted neglect of Appellant's medical needs. Even if we accept the facts as asserted by Appellant in his declaration are true, there is insufficient evidence to objectively conclude that a sufficiently serious act or omission occurred that resulted in the denial of necessities. *See Lovett*, 63 M.J. at 215. The post-trial declarations do not indicate that any prison official was aware of a substantial risk of serious harm

---

*States v. Healy*, 26 M.J. 394, 396 (C.M.A. 1988)); *see also* R.C.M. 1112(b) (*Contents of the record of trial*); R.C.M. 1112(f) (*Attachments for appellate review*). In addition, the "entire record" includes briefs and arguments that appellate counsel and an appellant personally present regarding matters that are already in the record of trial or have been attached to the record of trial. *Id.*

to Appellant's health or safety and disregarded that risk. *Id.* We find that Appellant has not presented evidence to establish wrongful intent, namely, that any official denied Appellant sterile water and medical supplies for his prescribed CPAP machine in order to increase Appellant's suffering or the severity of his sentence. Again, even if we were to accept Appellant's assertions as true, the conduct of prison officials in the record does not rise to the level of "deliberate indifference to serious medical needs of prisoners" proscribed by the Eighth Amendment whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. Furthermore, Appellant makes no claim that he suffered any serious or lasting physical harm, and on this record we find none.

Additionally, Appellant's case does not demonstrate any evidence to suggest that he attempted to petition for relief under Article 138, UCMJ. *See White,* 54 M.J. at 471. Appellant was required to exhaust his administrative remedies, which he did not do. In rare circumstances, military appellate courts have excused an appellant's failure to satisfy this third prong of the *Lovett* test. *See, e.g.*, *Wise*, 64 M.J. at 472–73 (finding "unusual" circumstances excused the appellant's failure to seek relief for an Article 12, UCMJ, complaint through the prisoner grievance or Article 138 processes). However, we do not find Appellant's case presents such circumstances. Appellant has failed to demonstrate any reason that prevented him from seeking relief under Article 138, UCMJ. To the contrary, Appellant's case illustrates the rationale for the requirement, which serves to "promot[e] resolution of grievances at the lowest possible level . . . [and] to ensure that an adequate record has been developed . . . ." *Miller*, 46 M.J. at 250. Had the record been developed closer in time to the conditions that Appellant complains of on appeal, this court might have been better informed whether those conditions presented a substantial risk of harm and if the conduct of prison officials was deliberately indifferent to a serious medical need.[10]

For these reasons, we conclude that Appellant does not warrant relief under the Eighth Amendment or Article 55, UCMJ, for the conditions of his post-trial confinement. We depart from the view of our esteemed colleague in the

---

[10] Among the written post-trial and appellate advice Appellant received from trial defense counsel was the right to file an Article 138, UCMJ, 10 U.S.C. § 938, complaint "for the poor conditions of [his] confinement." Appellant was further advised, "In order to get relief from the courts," one "ordinarily must exhaust every administrative remedy available to correct the issue," including "filing a complaint with the commander who ordered your confinement under Article 138, UCMJ."

11

dissent in his application of the first and second prongs of the *Lovett* test, 63 M.J. at 215, and his repudiation of the third.

### b. Sentence Appropriateness, Article 66(d)(1), UCMJ

Having resolved Appellant's Article 55 and Eighth Amendment claims, we next consider if our review of whether Appellant's sentence should be approved "on the basis of the entire record," Article 66(d)(1), UCMJ, permits or precludes our consideration of the post-trial confinement conditions that Appellant presents for the first time on appeal. We conclude that Article 66(d)(1), UCMJ, limits our review of the appropriateness of the sentence and thus precludes consideration of Appellant's statements of fact about his prison conditions in his declaration, which are presented for the first time on appeal.[11]

As discussed, this court's discretionary authority to review sentence appropriateness is not absolute. In this regard, we have a second point of departure from the dissenting opinion of our esteemed colleague. We are not empowered to grant relief for any condition of post-trial confinement simply because we disapprove of an appellant's treatment. *Gay*, 75 M.J. at 269. Rather, our discretion must be grounded on "a legal deficiency in the post-trial process," *id.*, even though it need not "rise to the level of an Eighth Amendment or Article 55[, UCMJ,] violation in post-trial confinement conditions cases." *Id.* at 268. Exercising this court's duty "to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials," *Jessie*, 79 M.J. at 443 (quoting *Erby*, 54 M.J. at 478), we find no legal error or deficiency in the post-trial process and thus insufficient grounds to consider these prison conditions as part of our Article 66(d), UCMJ, sentence appropriateness review.

Furthermore, the "entire record" contains no information about the conditions of Appellant's post-trial confinement. Although we exercise our authority to consider outside-the-record matters to determine if Appellant's sentence is correct in law under Article 55, UCMJ, and the Eighth Amendment, *see Erby*,

---

[11] Our dissenting colleague observes that changes Congress made to post-trial processing in the MJA accelerate the time between adjournment and the convening authority's decision on action, thus lessening an appellant's opportunity to raise an issue about the conditions of confinement to the convening authority; however, the scope of this court's Article 66(d)(1), UCMJ, authority is unchanged from the language in Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016 *MCM*), neither enlarging nor reducing our authority to conduct a sentence appropriateness review.

54 M.J. at 478; *see also United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007),[12] we are precluded from further consideration of Appellant's statement of facts about these conditions to resolve his appeal; our determination whether his sentence is appropriate and "should be approved" as part of our Article 66(d)(1) review is confined to the record. *Jessie*, 79 M.J. at 441 (referencing Article 66(c), UCMJ). Neither the record of trial nor the matters attached to the record of trial mentions the conditions Appellant raises for the first time after the convening authority effectuated Appellant's sentence when he signed the Decision on Action memorandum on 5 June 2019.

Following this court's Article 66(d)(1), UCMJ, mandate to approve only so much of a sentence that, based on "the entire record, should be approved," we find no legal error or deficiency in the post-trial process and conclude the record contains no support to grant sentencing relief on the basis of Appellant's claims about the conditions of post-trial confinement.

## B. Timeliness of Post-trial Processing

Appellant argues he is entitled to relief because his case was not docketed with this court within 30 days of the convening authority's Decision on Action memorandum. In *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.), this court addressed issues regarding entries of judgment in place of the convening authority's action[13] and how future post-trial processing will be analyzed under *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006):

> In *Moreno*, the [CAAF] identified thresholds for facially unreasonable delay for particular segments of the post-trial and appellate process. *Id.* at 141–43. Specifically, the CAAF established a presumption of facially unreasonable delay where the convening authority did not take action within 120 days of the

---

[12] In *Jessie*, the United States Court of Appeals for the Armed Forces stated it "cabins but does not overrule [the holdings in] *Erby* or *Pena*," at the same time limiting sentence appropriateness review under Article 66, UCMJ, to the record. 79 M.J. at 444–45 (referencing Article 66(c), UCMJ). However, our superior court "may decide in a future case whether these holdings . . . should be overruled, modified, or instead allowed to stand as 'aberration[s]' that are 'fully entitled to the benefit of stare decisis' because they have become established.'" *Id.* at 445 (citation omitted).

[13] The EoJ has significance that action once had, and a convening authority is no longer required to act on the findings, R.C.M. 1110(e)(1)–(2), or the sentence, R.C.M. 1109(c)(5)(A), (g)(2); R.C.M. 1110(c), (e)(3). *See also United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *3–4 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) ("The entry of judgment takes the place of action by the convening authority under the former procedures in the sense that it 'terminates the trial proceedings and initiates the appellate process.'" (quoting R.C.M. 1111(a)(2))).

completion of trial, where the record was not docketed with the court of criminal appeals within 30 days of the convening authority's action, or where the court of criminal appeals did not render a decision within 18 months of docketing. *Id.* at 142.

*Moody-Neukom*, unpub. op. at *4. However, as we recently noted in *United States v. Livak*,

> [d]epending on the length and complexity of the record involved, we can envision cases in which the court reporter is still transcribing the proceedings after the convening authority's decision. As such, the prior 30-day period from action to docketing, which primarily involved transmitting an already-completed [record of trial] to the Court of Criminal Appeals, now overlays substantive actions such as completing the preparation of the record.

80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020). Additionally, this court held that:

> [T]he specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules. However, we can apply the aggregate standard threshold the majority established in *Moreno*: 150 days from the day [the a]ppellant was sentenced to docketing with this court. *See Moreno*, 63 M.J. at 142. This 150-day threshold appropriately protects an appellant's due process right to timely post-trial and appellate review and is consistent with our superior court's holding in *Moreno*.

*Id.*

Considering *Livak*, we review the dates of the post-trial processing in Appellant's case. Appellant's trial concluded on 23 May 2019. Seven days later, Appellant submitted clemency. On 5 June 2019, the convening authority signed a Decision on Action memorandum, modifying the sentence to comply with the PTA by taking action on the forfeiture component of the sentence. On 6 June 2019, the military judge signed the EoJ. On 2 July 2019, the court reporter completed the trial transcript and the record was certified on 15 July 2019. Because contraband was part of the evidence of record, and because the case was tried overseas, logistical issues complicated assembly of the record of trial and forwarding to this court.[14] As such, this case was not docketed with

---

[14] In response to Appellant's assignment of error, and without opposition, a court reporter chronology and two declarations are attached to the appellate record. Neither

the court until 14 August 2019. From the conclusion of trial to the convening authority's decision on action, 13 days passed. Another 70 days passed from completion of the Decision on Action memorandum to docketing.

From the conclusion of trial to docketing, just 83 days elapsed, which is substantially less than the 150 days for a threshold showing of facially unreasonable delay that this court found in *Livak*. *See* 80 M.J. at 633–34. Thus, we find no facially unreasonable delay or violation of Appellant's due process rights occurred. Nonetheless, assuming *arguendo* that there was a facially unreasonable delay, we have assessed whether there was a due process violation by considering the four factors the CAAF identified in *Moreno*: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). We have also considered that where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We discern no prejudice, and we find no violation of Appellant's rights.

In the absence of a due process violation, this court considers whether relief for excessive post-trial delay is warranted consistent with this court's authority under Article 66(d)(1), UCMJ. *See also Gay*, 74 M.J. at 744; *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). Having considered the entire record and the particular facts and circumstances of this case, we find Appellant is not entitled to any relief on this issue.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles

---

Appellant nor the Government address whether the documents are part of the "record" or are "attached" to the record. *See Jessie*, 79 M.J. at 440–41. We assume without deciding that the Government is permitted to rebut Appellant's claim of excessive delay with unchallenged documentation. Accordingly, we consider them in our analysis, recognizing that Appellant has not established a threshold showing of facially unreasonable delay. *Cf.* Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2) (A Court of Criminal Appeals "may provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record.").

59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.


MEGINLEY, Judge (dissenting in part and in the result):

I agree with the majority in that Appellant is not entitled to any relief for alleged post-trial delays related to his case. However, I offer a different view than the majority on whether Appellant suffered any cruel or unusual conditions of post-trial confinement in violation of the Eighth Amendment[1] or Article 55, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 855.[2]

Appellant did not raise his Continuous Positive Airway Pressure (CPAP) issues in his clemency matters. This is not a surprise, as he had only been in confinement a few days when he submitted his matters, and, as I noted in *United States v. Willman*, "the time to include post-trial matters in the record is nearly irrelevant; gone are the days when an appellant could be in confinement for months before action." No. ACM 39642, 2020 CCA LEXIS 300, at *28 (A.F. Ct. Crim. App. 2 Sep. 2020) (unpub. op.) (Meginley, J. concurring in the result). Realistically, once the entry of judgment was signed, Appellant would have little, if any, contact with his trial defense counsel, especially once he was transferred from Kadena Air Base, Japan, to Joint Base (JB) Charleston, South Carolina.

In a post-trial declaration to this court, Appellant declared that he was prescribed a CPAP machine around June 2016 for sleep apnea and used the machine while he slept. Appellant noted the importance of using sterile and/or distilled water, which would prevent any buildup from natural minerals in the machine. Appellant specifically stated, "Medical providers recommend that

---

[1] U.S. CONST. amend. VIII.

[2] In *United States v. Jessie*, the United States Court of Appeals for the Armed Forces (CAAF) explained the general rule that the Courts of Criminal Appeals (CCAs) "may not consider anything outside of the 'entire record' when reviewing a sentence under Article 66(c), UCMJ[, 10 U.S.C. § 866(c)]." 79 M.J. 437, 441 (C.A.A.F. 2020) (quoting *United States v. Fagnan*, 30 C.M.R. 192 (C.M.A. 1961)) (additional citation omitted). However, the CAAF also recognized that "some [of its] precedents have allowed the CCAs to supplement the record when deciding issues that are raised by materials in the record," specifically issues concerning claims of cruel and unusual punishment. *Id.* at 442; *see United States v. Erby*, 54 M.J. 476, 477 (C.A.A.F. 2001). In *Jessie*, the CAAF declined to disturb this line of precedent. *Id.* at 444. Accordingly, *Jessie* permits this court's review of Appellant's matters. *See id.* at 444–45.

CPAP supplies be replaced every three months for proper maintenance and maximum effectiveness."

While he was at the Marine Corps Installations Pacific Brig (MCIPAC) at Camp Hansen, Japan, and supported by his filings with confinement officials, Appellant noticed the water in his machine was discolored and the color seemed consistent with the color of the water from the drinking fountain; Appellant also noticed a buildup in rust in the machine. When he brought the issue to the attention of confinement officials, he was told that "[they were] not using tap water but that . . . the water [they] were using could have expired or that [they] could have received a bad batch." Appellant stated he was developing painful sores inside his nose. Appellant also discussed his request for supplies.

Documents provided from both Appellant and the Government show that Appellant made three requests related to his CPAP machine to MCIPAC officials. The first occurred on 28 July 2019, and in his request, Appellant asked for cleaning supplies. On 9 September 2019, Appellant made two requests: one inquiring about his medical supplies, and one request (via a Department of Defense (DD) Form 510, *Prisoner Request Form*) where Appellant raised concerns that brig medical staff personnel were not providing him sterile water to clean his CPAP. Notably, confinement officials acknowledged that, because Appellant was Air Force, his medical care was

> outside the scope of brig medical [as] USAF prisoners are referred to the 18th Medical Group located on Kadena Air Force [sic] Base, Japan. In this instance, it appears that [Appellant's] request may have went unanswered for the reason that the 18th Medical Group did not recognize that [Appellant] was in confinement. . . . Additionally, while in confinement [Appellant] made over forty-three . . . prisoner requests via DD [Form] 510s, [and] all were satisfactorily addressed.

With respect to tap water being given to Appellant instead of sterile water, Appellant complained,

> The [CPAP] machine requires sterile/distilled water for patient health and machine longevity. I have reason to believe the medical staff at this MCIPAC Brig are refilling the sterile water bottles with water from the tap [and/or] water fountain. The water is discolored, the machine parts are discoloring, and I am developing painful sores inside of my nose. I wiped the water chamber of the machine and discovered a hefty amount of rust water deposits.

17

Appellant also stated, "Request to know . . . why tap water is being used inside a sterile water container causing my machine and supplies to deteriorate and causing sores inside my nose."

After Appellant raised the issue of tap water being used instead of sterile water, confinement officials responded to Appellant that medical was "not refilling sterile water bottle[s] from the tap. They will keep a closer watch of opened bottles. It is YOUR responsibility to periodically clean your machine. Cleaning can be accomplished at medical." Appellant was transferred to JB Charleston the next week.

While at JB Charleston, confinement officials acknowledged Appellant had been trying to order new supplies for his CPAP machine on several occasions. A confinement official noted that "[Appellant] has equipment that is functioning fine with the exception of a head strap that comes unattached while he sleeps; he reattaches it."

Like most opinions addressing post-trial confinement conditions, the majority cites to the three-part test in *United States v. Lovett*,[3] where to demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety; and (3) that he "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 [U.S.C.] § 938 [2000]."

63 M.J. 211, 215 (C.A.A.F. 2006) (omission and third alteration in original) (footnotes omitted). *Lovett* squarely places the burden on an appellant to demonstrate an Eighth Amendment violation. Yet, the law expects a confinee, who has little opportunity for meaningful or expeditious legal assistance, to navigate and exhaust remedies for a grievance he may legitimately have, against individuals whose primary responsibility, in part, is to ensure his punishment is served.[4]

Under the current state of the law, even if a confinee is able to prove the first factor under *Lovett*, it is a rare case where a confinee will be able to prove the state of mind of prisons officials and deliberate indifference. Confinement

---

[3] According to Lexis research, approximately 71 appellate opinions have cited the *Lovett* test to date.

[4] *See* Dep't of Defense, Instr. 1325.07, Administration of Military Correctional Facilities and Clemency and Parole Authority (Mar. 11, 2013, Incorporating Change 4, August 19, 2020).

facility officials respond, and the confinee, who is locked away, with little recourse and little opportunity to question officials or gather evidence, has the burden of proving deliberate indifference. In other words, the current state of the law comes too close to blindly accepting that any response to a confinee's grievance from prison officials that sounds even remotely reasonable, and whether valid or not, will counter any deliberate indifference. And, even if a confinee does everything he or she is supposed to do, if they fail to file an Article 138, UCMJ, 10 U.S.C. § 938, complaint, then that confinee has failed to demonstrate an Eighth Amendment violation. To quote Judge Sullivan on this issue, "it seems patently unfair to me to deny [Appellant's] claim on the post-factum basis that he failed to follow proper procedure." *United States v. Miller*, 46 M.J. 248, 251 (C.A.A.F. 1997) (Sullivan, J., dissenting).

In his dissent in *United States v. Wise*, Chief Judge Effron raised the issue of confinement conditions, and which party should bear the burden of proving exhaustion of remedies. 64 M.J. 468, 478 (C.A.A.F. 2007) (Effron, C.J., dissenting). Recognizing that "the exhaustion requirement promotes two goals: (1) resolution of grievances at the lowest possible level; and (2) development of an adequate record for judicial review," *id.*, Judge Effron stated,

> The Supreme Court concluded that failure to exhaust administrative remedies is an affirmative defense available to the government in civil litigation about prison conditions. In that context, once a prisoner raises a claim of illegal punishment, the burden is on the government to prove failure to exhaust.

*Id.* at 479 (Effron, C.J., dissenting) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). Judge Effron further stated,

> Our practice of placing the burden on an appellant to prove exhaustion is a judicial doctrine, not specifically required by the [UCMJ] or the Manual for Courts-Martial. In light of the Supreme Court's decision in *Jones*, [549 U.S. at 215], it is not apparent why the prison condition litigation in the military should not place the burden on the government rather than on the defense to demonstrate a failure to exhaust available remedies.

*Id.*

In Appellant's case, if we were to place the burden on the Government to show it provided appropriate medical care, and not Appellant, arguably, the Government would have failed its burden. Applying the facts to the three-part *Lovett* test, I would find Appellant met the requirements of the first two factors. Appellant used a CPAP machine, a device which assists his breathing due to sleep apnea. He made a request for sterile water and parts. He made a report that discolored water was being used and the ramifications of using non-sterile

water. Appellant reported he was told he had been provided "expired water" (which is unexplained by confinement officials). What is perhaps the most telling of responses by confinement officials is their baffling response to Appellant, which was that he needed to clean his equipment. Appellant's case does not involve a wool blanket[5]—not having the proper equipment for a breathing apparatus is an objectively, sufficiently serious act or omission resulting in the denial of necessities to properly use the device. I would find Appellant met the first prong.

The second prong appears to place a near-impossible burden on most appellants, and "requires" Appellant to show "a culpable state of mind on the part of prison officials amounting to deliberate indifference to [his] health and safety."[6] It essentially places the credibility of Appellant, who is in jail for committing a crime, against the credibility of confinement officials. Yet, there was no reason for Appellant to exaggerate his complaint. As seen by the responses, MCIPAC officials placed the burden of medical care on Air Force officials, and then instructed Appellant to clean his machine. Appellant's medical treatment continued to pose problems after he was transferred to JB Charleston. Officials there said the supplies were backordered, however, this is JB Charleston's responsibility, not Appellant's. These responses simply do not appear to be credible, but at the very least, evidence a lack of attentiveness, concern, and competence. Based on confinement officials' responses, there is simply no good reason for the delay in supplies. Appellant could have filed a DD Form 510 every day, but that would be unreasonable. Appellant did what he was supposed to do and exhausted the prisoner grievance system, to no avail. Based on the confinement officials' responses, I would find there has been deliberate indifference by denying or delaying Appellant's serious medical needs.

Finally, the current state of the law requires that an appellant must file an Article 138, UCMJ complaint, unless Appellant's confinement conditions were so unusual or egregious so as to negate the need for the requirement. Unlike the facts in *Wise*,[7] Appellant's case involves the need for medical assistance to maintain the proper functioning of a medically prescribed machine that needs medical attention or assistance throughout its use. As such, we look to the third prong of the *Lovett* test, that an appellant "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ." An appellant can file all the complaints with prison officials he or she desires,

---

[5] *See United States v. Flores*, No. ACM 39253, 2018 CCA LEXIS 443, (A.F. Ct. Crim. App. 13 Sep 2018) (unpub. op).

[6] *Lovett*, 63 M.J. at 215–16.

[7] In *Wise*, the CAAF found unusual circumstances in the appellant's post-trial conditions negating the need to file an Article 138 complaint. *See* 64 M.J. at 472.

but unless the confinement conditions are unusual or egregious, if the appellant fails to petition for relief under Article 138, UCMJ, they are not entitled to relief from this court for an Eighth Amendment or Article 55, UCMJ, claim. In other words, an appellant is entitled to reasonable health care; however, no redress is available under this legal theory, unless he or she objected to it in a specific way.

A careful review of legal precedent reveals how the *Lovett* Article 138, UCMJ, factor developed. If one follows the citations from *Lovett*, the United States Court of Appeals for the Armed Forces (CAAF) cites to *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997), which quotes *United States v. Coffey*, 38 M.J. 290, 291 (C.M.A. 1993), which cites to *Walker v. Commanding Officer*, 41 C.M.R. 247 (C.M.A. 1970), which appears to be the initial basis for the Article 138 requirement. In *Walker*, the court stated

> that Article 138[, UCMJ], provides for consideration of a complaint by a person in confinement following conviction and before the end of appellate review. If such a person believes the circumstances of his custody violate either Article 13[, UCMJ, 10 U.S.C. § 813] or Article 71(c)[, UCMJ, 10 U.S.C. § 871(c)], he *may* apply for redress to his Commanding Officer.

41 C.M.R. at 250 (emphasis added). The court in *Walker* further noted that if an appellant is unsuccessful in securing relief under Article 138, UCMJ, that appellant still has the opportunity to present to the court evidence "that the circumstances of his confinement were in violation of the code." *Id.* at 251.

*Coffey* was decided 23 years later. In this *per curiam* opinion, the *Coffey* court, citing to *Walker*, made the Article 138 requirement a *must*, stating,

> While Article 55, UCMJ, 10 [U.S.C.] § 855, prohibits such [cruel and unusual] punishment, and under appropriate conditions we might exercise our power to issue an extraordinary writ, a prisoner must seek administrative relief prior to invoking judicial intervention. In this regard [an] appellant must show us, absent some unusual or egregious circumstance, that he has exhausted the prisoner grievance system of the Disciplinary Barracks and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938.

38 M.J. at 291 (citation omitted).

In *Miller*, a case which dealt with the exercise of religious beliefs, the CAAF revisited *Coffey*, and shed more light on the Article 138 requirement, stating,

> In addition to promoting resolution of grievances at the lowest possible level, the exhaustion requirement in *Coffey* is intended

to ensure that an adequate record has been developed with respect to the procedures for considering a prisoner grievance and applicable standards. An appellant who asks us to review prison conditions, a matter normally not within our appellate jurisdiction, must establish a [c]lear record demonstrating both the legal deficiency in administration of the prison and the jurisdictional basis for our action.

46 M.J. at 250. In *Miller*, there was no record that the appellant exhausted the prisoner-grievance system or pursued remedies under Article 138, UCMJ. *Id.* (footnote omitted). However, as previously mentioned, Judge Sullivan dissented, stating,

[T]he majority recognizes that "there is no clear-cut procedure for a military prisoner to follow in order to obtain relief from illegal post-trial confinement." Yet, it fatally faults [the] appellant, a short-term prisoner, for not demonstrating that he exhausted certain formal methods of seeking relief such as the applicable prisoner-grievance system, the Article 138, UCMJ, 10 U.S.C. § 938, complaint procedure, or a post-trial claim to the military judge. This hypertechnical approach is unacceptable because it ignores the reasonable steps that appellant did take to present his religious claim in a timely and competent fashion.[8]

*Id.* at 251 (Sullivan, J., dissenting).

Appellant's case does not involve religious freedom, but it does involve the need for medical attention, requests which were timely documented and should not have been ignored. It is easy for a Court of Criminal Appeal (CCA) to deny Appellant's relief because he did not file an Article 138 complaint. It would also be easy to say that Appellant's requests should bow to the demands and nuisances of prison life. Yet, the mere fact that we can deny relief to a female prisoner who was not provided feminine hygiene products, or a diabetic prisoner denied testing supplies, or a prisoner who was not provided a mask (or given other precautions) during a pandemic, all because that confinee did not file an Article 138 complaint, underscores the fact that there are some basic level of human necessities, that are so obvious, that addressing those needs should not require a prisoner to file administrative paperwork to alert jail officials of that necessity. Our system should be better than this line of thinking.

---

[8] Judge Sullivan makes a distinction between *Coffey* and *Miller*, in that appellant Miller had already served his term by the time the case reached the CAAF, whereas appellant Coffey was still in confinement. *See Miller*, 46 M.J. at 251 (Sullivan, J., dissenting).

I recognize that one benefit, if not the most important benefit, of the Article 138 requirement is that it limits the potential for abuse in the filing of complaints and tries to have complaints resolved outside the court system. In practical terms, if an appellant has an Eighth Amendment issue, yet files numerous extensions of time with a court to address assignments of error, and never says anything about his post-trial conditions until months (or years) after his case is docketed, courts should be and must be highly skeptical of his or her claims and those claims should be highly scrutinized. Further, trial defense counsel should be emphasizing this requirement in their post-trial advisements (and not merely on the day of trial), and later, appellate defense counsel should be advising their client of this Article 138, UCMJ, requirement immediately upon their detail; *Lovett*, and the precedent established by it, has been in existence for quite some time.[9] Conversely, in Appellant's case, although he did not file an Article 138 complaint, because his counsel moved expeditiously to file his assignments of errors (to her great credit), there would have been a smaller window to file an Article 138 complaint (and present it to this court). Yet, it has been nearly 14 months since that filing occurred and we are only now addressing his issue. Whether Appellant has received any relief or resolution is a mystery.

There is also a practical issue to the Article 138, UCMJ, requirement: the law assumes most servicemembers can articulate how to file an Article 138 complaint, or know to whom they would petition for relief.[10] Even if Appellant's commander had been served the Article 138 complaint, what exactly is he or she going to do? Does Appellant's commander have the authority to order confinement officials to provide CPAP supplies? More importantly, who is Appellant's commander, now that Appellant has been in confinement for nearly 18 months?[11] If these questions cannot be readily answered, how do we expect an appellant to know? Assuming an appellant has filed an Article 138 complaint, would that filing absolve confinement officials from their responsibilities of ensuring a confinee's medical needs are met,[12] shifting the burden on a commander, who may not be easily identified, who may be on the other side of the world, and may not have even known the appellant? In the end, I agree with

---

[9] Unlike many other cases involving these issues, Appellant's counsel expeditiously filed his assignments of error with the court.

[10] Trial defense counsel typically do advise appellants how to address confinement conditions in their post-trial and appellate rights advisement.

[11] Noticeably absent from the post-trial submissions is whether Appellant had any contact from his leadership before he was transferred to JB Charleston.

[12] *See Taylor v. Riojas*, __ S. Ct.__, 208 L. Ed. 2d 164 (2020), which recently addressed issues of "qualified immunity."

Appellant's statement that his commander "cannot possibly be in a better position than his confinement officials to order new CPAP supplies."

When the CAAF revisited *Coffey* in *Miller*, the court noted that "prisoner complaints are a vexing problem." 46 M.J. at 249. Nearly 25 years later, prisoner complaints are still a vexing problem. Appellant received an appropriate punishment for his crimes, and long after this opinion is released, he will continue to feel the effects and ramifications of his crimes, and rightfully so. Yet while some people may read this dissent and find it to be somewhat trivial, to Appellant his medical issue was significant enough to file multiple complaints at two confinement facilities and directly contact 18th Medical Group on Okinawa, Japan. Conversely, it seems even more trivial not to provide Appellant with a few jugs of distilled water and the proper supplies, so he could properly use his machine.

Perhaps *Lovett* is not that constraining. Even without the Article 138, UCMJ, requirement, this court could still grant relief under Article 66(d), UCMJ. However, in light of evolving case law post-*Jessie*, and unresolved questions on this court's capability to consider post-trial submissions, I am not confident this court will fully retain our ability to review sentence appropriateness under Article 66(d) as we go forward. Appellant's case is an example of why it may be time to reconsider the Article 138, UCMJ, prong of *Lovett*. Whether an appellant *should* have made an Article 138 complaint, instead of making it a *mandatory* requirement, gives this court more flexibility in making these determinations, instead of shutting the door on an appellant based on a procedural issue.

Nonetheless, although Appellant did not submit an Article 138 complaint, under our broad authority and mandate under Article 66(d), UCMJ, as it now stands, I would grant some sentence relief due to Appellant's post-trial treatment.[13] *See United States v. Gay*, 74 M.J. 736, 740 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002).



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[13] *See United States v. Willman*, No. ACM 39642, 2020 CCA LEXIS 300, \*26–28 (A.F. Ct. Crim. App. 2 Sep. 2020) (unpub. op.) (Meginley, J. concurring in the result), *rev. granted*, __ M.J. __, No. 21-0030, 2020 CAAF LEXIS 692 (C.A.A.F. 21 Dec. 2020).